QUIDORT'S ADMINISTRATOR *vs.* PERGEAUX and wife *

1. Evidence to show that an alleged intestate left a will, and that therefore the grant of administration was unlawful and void, cannot be received in a suit in this court.

2. The grant of administration constitutes the person to whom it is granted the administrator, whether rightfully or wrongly granted, and cannot be inquired into in this court, collaterally.

3. The acts of the surrogate can only be reviewed by appeal to the Orphans Court or Prerogative Court. They cannot be impeached collaterally. The only question that can be made is, whether he had jurisdiction.

4. If the supposed intestate is not dead, or if letters lawfully granted to some one else are in existence, the grant is void.

5. A deed taken in the name of the wife, for property purchased with her separate estate, is no fraud upon creditors, even if taking title in her name was to avoid any claim by judgment against her husband for debts which he then owed.

---

*CITED *in Bank* v. *Sprague,* 5 *C. E. Gr.* 25; *M'f'g Co.* v. *Hummell,* 10 *C. E. Gr.* 47; *Beal's Ex'r* v. *Storm,* 11 *C. E. Gr.* 377; *Ryno's Ex'r* v. *Ryno's Adm'r,* 12 *C. E. Gr.* 524; *Paterson* v. *Mulford,* 7 *Vr.* 488.

6. But where the balance of the purchase money for such property, was paid out of the earnings of a business carried on in the name of the wife, but to which his skill and labor largely contributed, such property will be decreed to be held by the wife in trust for his creditors, subject to her claim for the money advanced out of her separate estate.

7. A husband may, as against his creditors, allow his wife to have for her separate use, the earnings of herself and of the labor of their minor children, but he may not give to her to be invested in her own name, the proceeds of his own business, skill, and labor.

8. The law was intended to protect the property and earnings of the wife, and not those of the husband against his creditors. And when they mix them so that they cannot be separated, the husband cannot make a distinct gift to his wife of her own earnings, and they remain as at common law, his property.

The cause was argued on the pleadings and proofs.

*Mr. J. P. Jackson,* for complainant.

1. As to the demurrer contained in the answer, we contend that the supplemental proceedings authorized by the act to prevent fraudulent trusts and assignments, do not deprive the Court of Chancery of its jurisdiction over cases of this kind. Any other conclusion than this, would render the court liable to be shorn of much of its original jurisdiction, by the new and cumulative statutory remedies which the legislature proposes for modern convenience. 1 *Story's Eq. Jur.,* § 64 *i, 80; Cook* v. *Johnson,* 1 *Beas.* 54.

2. This court will come to the aid of a judgment creditor who has exhausted his legal remedies, and assist him by way of discovering his debtor's assets, or of applying property held in trust, or fraudulently, to the discharge of the debt. *Disborough* v. *Outcalt, Saxt.* 298; *Brown* v. *Fuller,* 2 *Beas.* 271.

3. We contend that the title to the property in question is fraudulently held by the wife, and really belongs to the husband.

4. In any event, all the money paid on the property since the time of purchase, was derived from the earnings of Pergeaux and wife, and therefore, all belongs to him.

The business (that of restaurant and wine saloon) was his business; the licenses required by the U. S. Government and city of Newark, were taken in his name; the nature of the business is such as a woman cannot well manage, and the evidence shows that the husband did most, and almost all, of the work.

In such a case, the earnings of a wife clearly belong to the husband; and their joint earnings, paid on account in the purchase of lands, even when the title is taken in her name, will be traced out, and applied to satisfy his creditors. *Skillman* v. *Skillman*, 2 *Beas.* 403; *Johnson* v. *Vail*, 1 *McCarter* 423; *Avery* v. *Doane*, 3 *Am. Law Reg.* (*February*, 1855) 229; *Lovett* v. *Robinson*, 7 *Howard's Prac. R.* 105; *Raybold* v. *Raybold*, 8 *Harris* 308; *Woodbeck* v. *Hewens*, 4 *Am. Law Reg.* (*N. S.*) 121; *Parvin* v. *Copewell*, 3 *Am. Law Reg.* (*N. S.*) 575.

*Mr. Borcherling*, for defendants.

1. The complainant is not entitled to relief in this court, until he has exhausted his remedy at law. *Act to prevent Fraudulent Trusts and Assignments*, (*Nix. Dig.* 271,) *and supplements.* .

2. The existence of a will having been proven, complainant has no standing in court, unless he shows that he was appointed by the court as administrator *cum testamento annexo*.

3. The charge of fraud alleged against defendant, Maria Marguerite, is merely inferred, and the testimony in the cause shows nothing, that she was either directly or indirectly possessed of any knowledge thereof, if any fraud was practiced; she acted in good faith, and the act of New Jersey, securing the property of married women, protects her. *Nix. Dig.* 503.

Fraud cannot be presumed; it must be established by proof. 1 *Story's Eq. Jur.*, § 190.

4. The defendant, M. M., should not have been made a party to this cause *simply* upon the presumption of fraud, and thereby

endeavoring to avoid the reception of her testimony.   Courts of equity will liberally construe acts for benefit of married women.   A married woman may be barred from testifying in favor of her husband, but in this case she was wrongfully made party, and is entitled to the right to protect her estate.

5. Even if Pergeaux had declared that the premises were his property, either by advertisement or verbally, such declarations cannot affect the wife's separate estate.   *Bradstreet* v. *Pratt,* 17 *Wend.* 44; *Stuart* v. *Kissam,* 2 *Barb. S. C. R.* 493.

6. The wife, in equity, will be protected, not only against the husband but against his assignees, although for value; and against any sale made, or lien created by the husband, although for value, or in payment of a just debt.   1 *Vern.* 7, 18; 1 *P. W.* 382, 458; 2 *P. W.* 608; 2 *Atk.* 207, 417; 2 *Dick.* 491; 4 *Bro. C. C.* 326; *Burdon* v. *Dean,* 2 *Ves.* 607; *Like* v. *Beresford,* 3 *Ves.* 506; *Macaulay* v. *Phillips,* 4 *Ves.* 19; *Franco* v. *Franco, Ibid.* 515; *Wright* v. *Morley* 11 *Ves.* 12; *Johnson* v. *Johnson, Jac. & W.* 456; *Ex parte Beresford,* 1 *Dess.* 263; *Howard* v. *Moffatt,* 2 *Johns. C. R.* 206; *Haviland* v. *Myers,* 6 *Johns. C. R.* 25, 178; *Munford* v. *Murray,* 1 *Paige* 620; *Van Epps* v. *Van Deusen,* 4 *Paige* 64.

She will be protected as superior to the lien of a judgment creditor, requiring the aid of a court of equity.   *Sleight* v. *Read,* 18 *Barb. S. C. R.* 159; *Smith* v. *Kane,* 2 *Paige* 303; *Haviland* v. *Bloom,* 6 *Johns. C. R.* 178; *Howard* v. *Moffatt,* 2 *Johns. C. R.* 206; *Van Duzer* v. *Van Duzer,* 6 *Paige* 366; *Taggard* v. *Talcott,* 2 *Edw. C. R.* 628; *Danforth* v. *Woods,* 11 *Paige* 9; *Shirley* v. *Shirley,* 9 *Ibid.* 363; 2 *Story's Eq. Jur.,* § 1385–7.

7. In this case the husband and wife treated the original purchase of the real estate, and the personal property used in and about the business, carried on by the wife, as the *property of the wife,* from the time of such purchase.

The husband never interfered or meddled with the wife's property.

Constant Pergeaux had a partner in business in another

part of the city, where they carried on a separate business, and by whom the debt under which complainant claims, was contracted.

No part of the goods purchased for which that debt remains unpaid, ever went into the possession of the wife; nor did she receive any proceeds derived therefrom. Under the evidence in this cause, the defendant, M. Marguerite, is entitled to a decree that the real and personal property in question, being purchased with her separate property and the issues and profits arising from the same, belong to her as her separate estate, and are not liable to creditors of her husband, for debts contracted by him without her knowledge or consent, and over which she could not exercise any control.

THE CHANCELLOR.

The complainant, as administrator of Quidort, in October, 1865, recovered in the Essex County Circuit Court, a judgment against the defendant, Constant Y. Pergeaux, for $573. The execution issued on this judgment, was returned wholly unsatisfied; and the complainant filed his bill in this court against the defendants, C. Y. Pergeaux and Martha Marguerite, his wife, charging that the premises known as No. 52 Mechanic street, in the city of Newark, which had been conveyed to said Maria Pergeaux, by Martin B. Clinchard, by deed dated August first, 1860, were the property of her husband, and had been bought and paid for with his money, and were held by her for the benefit of her husband, and to aid him in defrauding his creditors; and praying that these premises may be declared to be held in trust for the complainant, and other creditors of Pergeaux, and may be sold for the purpose of paying the judgment of the complainant.

The defendants deny the fraud and the trust, and answer that the premises were bought and paid for by the defendant, Maria Pergeaux, in her own name, for her own use, and with money of her own separate estate.

There are two preliminary questions as to evidence. The defendants offered evidence to show that Quidort left a will,

and that therefore the grant of administration to the complainant by the surrogate of Essex, was unlawful and void. This evidence cannot be received, as the question of the right to administration cannot be examined here. The granting administration is exclusively with the Ordinary and his surrogates. The grant is a proceeding *in rem,* in the strict sense of that term. It constitutes the person to whom it is granted the administrator, whether rightfully or wrongly granted; and it cannot be inquired into here collaterally. The act of the surrogate can only be reviewed by appeal to the Orphans Court, or Prerogative Court. Like the acts of all other regularly constituted tribunals, the acts of the surrogate cannot be impeached collaterally. The only question that can be made is, whether he had jurisdiction. If the supposed intestate was not dead, or if letters lawfully granted to some one else were in existence, the grant would be void.

The other question is upon the admissibility of the evidence of the defendants. The action is by the complainant, in his representative capacity, and the defendants clearly cannot be witnesses.

By the answer and proofs, it appears that the premises were purchased by the defendant, Maria, of Martin B. Clinchard, on the first day of August, 1860, for $5000, of which $500 was paid in cash, out of her own separate property; the residue of the purchase money was to be paid in yearly instalments of $500 each, without interest; the payment was secured by a mortgage on the premises. The defendants, or one of them, had kept a saloon and restaurant, for the sale of liquors and other refreshments, on the premises, from the year 1855; the premises were then rented of Clinchard. The answer states that the premises were leased to Mrs. Pergeaux, and the business was set up with her money, and conducted by her, with the advice and assistance of Mr. Pergeaux, who, for these services, was to have his support and that of his family, out of the profits; and the residue was to be for the benefit of the separate estate of Mrs. Pergeaux. Mr. Clinchard, in his testimony, states that the business was

commenced on the premises in 1855, by Mr. Pergeaux and a Mr. Calame, in partnership, and that the money was furnished by Mr. Calame; that they had at first, a lease to them for two years, of the premises; that after that lease, he gave a lease to Mr. Pergeaux for the term of five years, before the expiration of which, the premises were conveyed to Mrs. Pergeaux. He says that Mrs. Pergeaux paid him the $500 paid at the delivery of the deed; she paid it in French gold, just after her return from Europe; and that he understood it was money that she had received of her own estate, when in Europe. The answer on this point is responsive to the bill, and as it is corroborated by Clinchard, and contradicted by no one, it must be considered as established that the money paid at the conveyance to her, was the money of Mrs. Pergeaux. She had a right to buy this property with her own money, and to take the deed in her own name. And the deed or conveyance was no fraud upon his creditors, even if the object of taking the title in her name had been to avoid any claim by judgment against him, for debts which he then owed.

The subsequent payments of $2500 or $3000 were made out of the profits of the business carried on upon the premises; it was the business established there before the purchase of the premises, which had been continued since, conducted by Mr. Pergeaux and his wife. The answer says that these payments were made out of the separate property of Mrs. Pergeaux; but it claims the profits of this business as her separate estate, and does not set out any other separate estate which she had, out of which they could have been paid, and admits that she was enabled to make them by her success in business. In stating that the business in 1855 was set up by Mrs. Pergeaux, with her separate property, the answer is not responsive to the bill, and this fact is not proved by any witness; and the testimony of Mr. Clinchard contradicts it. As the proof stands, the business was set up by Mr. Pergeaux and Mr. Calame, with the funds of the latter, and was continued by Mr. Pergeaux, until 1860; with whose funds, or in whose name, does not appear; but the presumption is, if the

business of a firm is continued in the same place after dissolution, by one of the members, that it is continued by him for his own benefit, and by his own means. The bill charges that the business *lately* carried on upon the premises, was carried on by Constant Pergeaux, in the name of Mrs. Pergeaux, and that they claim and pretend that both the premises and the business belong to Mrs. Pergeaux. The charge is indefinite, by the use of the word *lately:* but I shall consider it as going back to the purchase of the property, and that the answer is responsive to the bill, from that time. The answer states that the business was carried on by Mrs. Pergeaux, with her own money, in her own name, for her own benefit; and although Mr. Pergeaux assisted, that he was to receive for his services the support of himself and family, and nothing more.

A husband is, at law, entitled to the earnings of his wife. The common law is not altered in this respect by the married women's act. But he may allow his wife to take her own earnings and appropriate them to her separate use, and such appropriation is good, even as against his creditors. When they are invested in her name, neither he nor his creditors can disturb them. It has been so decided in this state, in the case of *Stall* v. *Fulton,* 1 *Vroom* 430, and in this court, in *Johnson* v. *Vail,* 1 *McCarter* 423, and in *Skillman* v. *Skillman,* 2 *Beas.* 403. These cases hold, that a husband may give to his wife the proceeds of her own labor, although, in such cases, the actual gift must be clearly proved. But the opinion of Chancellor Green, in *Skillman* v. *Skillman,* holds, that " where a married woman *carries on business* in her own name, the avails of the business are not protected by the statute in relation to married women, but they remain the property of the husband, liable to be seized and taken in execution for the payment of his debts." In New York, the act of 1860, not yet copied into the legislation of this state, provides for that; their act of 1848, from which our married women's act was copied, did not enable a mar-

ried woman to carry on business for herself, in her own name. *Freeman* v. *Orsor*, 5 *Duer* 477.

In the cases of *Skillman* v. *Skillman*, and *Johnson* v. *Vail*, Chancellor Green, in deciding that the wife is entitled to the rents and products of her farm or other property, and the products of the labor of herself and minor children, distinguishes these from the proceeds of trade, carried on by her with her separate property.

If a married woman cannot carry on trade or business in her own name so that she can bind herself personally in relation thereto, but such power is confined to contracts relating to such separate estate as she may legally hold, then it follows, as a necessary consequence, that the business is the business of her husband, and the profits are his property. And, while a husband may, as against his creditors, allow his wife to have for her separate use the earnings of herself and of the labor of their minor children, he may not give to her, to be invested in her own name, the proceeds of his own business, skill, and labor. Else it would follow, that any married man who became embarrassed, could transfer his business to his wife, and continue it himself in her name, with all his skill and ability, and if she only took, or seemed to take, some part in the transaction of it, might invest the proceeds of his labor and management in the name of his wife, and set his creditors at defiance.

The law was intended to protect the property and earnings of a married woman, and not the property or earnings of her husband against his creditors; and when, as in this case, they mix up the earnings of the wife with those of the husband, so that they cannot be separated, the husband cannot make a clear, distinct gift of her own earnings to his wife, and they remain, as at common law, his property.

There is no evidence in this case that the wife originally, or in 1860, put any of her separate property in this business, or that she had any separate property beyond the sum of $500, paid to Clinchard. The only proof is in the answer, and beyond that sum it is not responsive, and there must be

proof. And besides the fact that the government license, the only means by which the business could be carried on, was taken out in his name, there is much other evidence to lead to the belief that the business was really the business of the husband, transferred to, and carried on in the name of the wife, for the purpose of delaying creditors in recovering their debts. I do not doubt that such was the fact.

In either view of the case, the profits of the business, with which $3000 has been paid on the mortgage to Clinchard, was the property of the husband, and, under the circumstances of this case, it must be considered as paid on that property, to keep it in her name beyond the reach of his creditors. This disposition of it, therefore, is a fraud upon his creditors, and so far as they are concerned, the property will be decreed to be held by the defendant, Maria Marguerite Pergeaux, in trust for the payment of his creditors, subject to the mortgage to Clinchard, and to her claim for the sum advanced out of her separate property for the purchase, and interest thereon.