EDITH STEELE, SURVIVING TRUSTEE, RELATOR, v. PAUL A. QUEEN, SURROGATE OF THE COUNTY OF HUNTERDON.

Argued June 11, 1901—Decided November 19, 1901.

1. The surrogate of a county in probating a will acts judicially and holds a court.
2. Whether an official holds a court is to be determined from the functions conferred upon him which he is empowered to perform.
3. The surrogate is made by statute the recorder of the papers and decrees in his own court; in fact, clerk of his own court.
4. He may exemplify the records of his office, under the act of congress, by making the necessary certificates both as judge and clerk.

On application for a *mandamus.*

Before Justices VAN SYCKEL, FORT and GARRETSON.

For the writ, *Howard M. Cooper.*

*Contra, Paul A. Queen.*

The opinion of the court was delivered by

FORT, J. This is an application for a *mandamus* to the surrogate of Hunterdon county to direct him to make the necessary certificates, required by the act of congress, for the exemplification of the record of the probate of a will by the surrogate of that county. That the will in question was probated by the surrogate of that county and that the probate proceedings thereon and a copy of the probated will are of record in his office is admitted.

He refuses to make the necessary certificates on two grounds:

*First.* That the surrogate is not a judge, and does not hold a court.

*Second.* If he is a judge and does hold a "Surrogate's Court," he is not clerk of the court, and cannot certify as such.

The proper exemplification of a record, under the act of congress, requires that the presiding judge shall certify that the clerk is clerk and that the clerk shall certify that the judge is judge. *Rev. Stat. U. S.,* § 906.

That the surrogate in probating wills acts judicially and holds a court we have no doubt. Griffith puts the "Surrogate's Court" under "courts of peculiar jurisdiction" in his enumeration of the courts of New Jersey. *Griff. L. R.* 1185.

Chancellor Zabriskie declared that "the acts of the surrogate can only be reviewed by appeal to the Orphans' Court or Prerogative Court. Like the acts of all other regularly constituted tribunals, the acts of the surrogate cannot be impeached collaterally. The only question that can be made is whether he had jurisdiction. *Quidort's Administrator* v. *Pergeaux,* 3 *C. E. Gr.* 472, 477.

Chancellor Runyon, as Ordinary, refers to this last case with approval, and moots the question whether a surrogate cannot set aside his own decree, if unlawfully made. *Edward Evans' Will,* 2 *Stew. Eq.* 571, 575.

The Court of Errors and Appeals has said of the surrogate: "His decree, until reversed, is both conclusive and final." *Ryno* v. *Ryno,* 12 *C. E. Gr.* 522.

It is only a court that can make a decree in a proceeding *in rem* which is conclusive and final, unless reversed on appeal by a court of appellate jurisdiction. Chancellor Pennington, as Ordinary, in 1843, clearly stated the origin of the power of the Ordinary or Surrogate General for the probate of wills, and likewise sketched the origin and power of surrogates. *In re Coursen's Will,* 3 *Gr. Ch.* 408.

A perusal of this opinion (for the report of which the reporter states he is indebted to Joseph P. Bradley, Esq.) will give the reader a lucid statement of how the jurisdiction of the Ordinary or Surrogate General arose, as well as that of his surrogates. It is quite clear that, prior to the constitution of 1844, the surrogate was a judicial officer within the jurisdiction conferred by statute. Whether an official holds a court is to be determined from the functions conferred upon him which he is empowered to perform. There was no refer-

ence to surrogates in the first constitution of our state, adopted in 1776, although by paragraph 8 the governor was declared to be "Ordinary and Surrogate General." The constitution of 1844 made the surrogates of counties constitutional officers. *Const., art. 7, § 2, ¶ 6.*

The duties of the surrogate are not defined by this constitutional provision, but still remain such as are prescribed by statute.

It is provided by the revision of 1898 (section 13) of the act respecting Orphans' Courts that "the surrogates of the several counties of this state shall take depositions as to wills and admit the same to probate and grant letters testamentary thereon," &c.; and by section 14 that "the application for the probate of the will of any person who was resident in this state at his decease, and for letters testamentary thereon, under the preceding section (13), shall be made to the surrogate of the county in which the testator resided at the time of his death." *Pamph. L., p.* 718. .

By section 17 the form of the letters to be issued by the surrogate if he probate a will are fully recited. It is quite doubtful if there exists any authority to probate a will, regular on its face and against which no caveat has been filed, in any county of this state, except in the Surrogate's Court of such county. The Orphans' Court, by the second section of the revised act above referred to, seems to be limited in its jurisdiction to the determining of controversies as to wills, as set out in the statute, or questions arising on appeal from the surrogate or a caveat. *Pamph. L.* 1898, *p.* 715, §§ 2, 13, 18.

The surrogate has an official seal and his certificate under it is made competent evidence in any court in this state by section 20 of the Orphans' Court act. By section 26 of the act the surrogate has power also to grant letters of administration upon estates of persons dying intestate "in all cases where administration may be granted thereon, unless dispute arises as to the right of administration," &c. Section 36 gives the surrogate like power, in appointing guardians, as the Ordinary, except dispute arise, &c.; and section 156 makes the

probate of wills and letters testamentary of administration and of guardianship issued by the surrogate "of the same validity and effect as the probate of wills and letters of administration or guardianship issued by the register of the Prerogative office, in the name of the Ordinary, with the seal of office affixed." The only relief against any of these acts of the surrogate is by appeal, as provided in sections 201, 202 and 203 of the Orphans' Court act. It would be difficult to set up a more complete line of judicial functions and powers than are given by the statute, to surrogates.

We also think that the surrogate is made, by statute, the recorder of the papers and decrees in his own court; in fact, clerk of his own court. Sections 157, 158, 159, 160, 161 and 162 of the Orphans' Court act seem to make this fact perfectly clear. The distinction drawn by these sections between his duties as clerk of the Orphans' Court and of the Surrogate's Court are manifest. Section 159 expressly defines his duty as clerk of the Orphans' Court to be "to keep regular minutes of the trials and proceedings of said court, and shall record, in books kept for that purpose, all orders and decrees of the court," &c.; and, by section 160, it is stated that "it shall be the duty of the surrogate to keep all papers and records pertaining to his office" (that is, as surrogate) ; and, by section 158, he is required to record in books all wills proved before him, together with the proofs thereof, all letters of guardianship, letters of administration, and letters testamentary by him issued or granted, and all things concerning the same, and also all inventories proved before him.

It would be difficult to designate a duty which a clerk of the Surrogate's Court would have to perform which is not here imposed. The surrogate is both judge and clerk of the Surrogate's Court, which, by law, he is authorized to hold, and he may make a certificate as "P. A. Q. surrogate and judge of the Surrogate's Court," and "P. A. Q. surrogate and clerk of the Surrogate's Court," and thus legally exemplify a record of his office, under the act of congress.

The issuance of an alternative writ of *mandamus* being

waived, and it being consented, in open court, by counsel, that, in case the court concluded that a writ should issue that a peremptory one should go, it is ordered accordingly, but without costs.