ANNA D. BABBITT

*v.*

FIDELITY TRUST COMPANY et al.

[Decided February 2d, 1906.]

Foreign executors are not involuntarily amenable to compulsory process in a suit in New Jersey where no probate proceedings of any sort have been had in this state, and the said executors have not done anything whatever within the state, unless the suit is either *in rem* or *quasi in rem.*

Heard on amended bill and plea.

Anna D. Babbitt, the complainant, was the daughter of Charles G. Campbell. Charles G. Campbell in 1898 conveyed all of his property, real and personal, to the Fidelity Trust Company, a corporation located at Newark, New Jersey, in trust for certain purposes declared in the instrument. Among other things it was to pay a monthly sum to the complainant, and upon the death of the said Charles G. Campbell certain payments were to be made, and the surplus or balance of the said trust estate was to be divided among the heirs-at-law of Charles G. Campbell according to the intestate laws of the State of New Jersey, the personal property of said estate to be divided, as aforesaid, according to the statute of distributions, and the real property then remaining in possession of the trustee to be divided, as aforesaid, according to the statute of descent.

Charles G. Campbell died on the 29th of May, 1905, leaving him surviving the complainant, his daughter; a son, and children of a deceased daughter.

The complainant charges that in March, 1902, she had a transaction with the New York Finance Company, a corporation of the State of New York, which transaction took place wholly within the State of New York. In the course of this business

she charges that she obtained a loan of $10,000, for which she gave as security a promissory note for $10,000 to the order of William Brewster Wood, of Philadelphia, Pennsylvania, upon which six per cent. interest was stipulated to be paid, and pledged therewith, as collateral security, all her right, title and interest in and to the estate of the said Charles G. Campbell coming to her at the death of said Charles G. Campbell, with certain conditions respecting their right to sell, &c., fully set forth in the bill. In addition to the collateral undertaking just referred to, she and her husband made an assignment of all of her interest in and to the estate of Charles G. Campbell, real and personal, with certain provisions set out in the bill; that said assignment was duly recorded on the 24th of March, 1902, in the Essex county register's office, in a book of deeds. She charges that she also gave, as consideration for the said loan of $10,000, a promissory note to the New York Finance Company aforesaid, dated March 24th, 1902, in the sum of $5,000, payable at and after the death of Charles G. Campbell, and pledged therewith, as collateral security, all of her right, title and interest in and to the estate of the said Charles G. Campbell coming to her at his death, and, in addition, gave to the said New York Finance Company an assignment of all her right, title and interest in and to the estate of said Charles G. Campbell coming to her at the death of said Charles G. Campbell, with certain provisions set out in full in the bill, which said assignment was executed by her and her husband, and was duly recorded in the office aforesaid on the 24th of March, 1902, in a book of deeds.

In addition to these papers she also executed an agreement with the New York Finance Company, which is set out in the bill, wherein it is recited that the New York Finance Company had procured Wood to make the loan to her of the $10,000, and that the New York Finance Company agrees to advance and pay interest on the loan and any premiums on the policies of insurance given therefor, and to protect her against any foreclosure of the loan until the absolute vesting in possession of the aforementioned estate, in consideration of which the complainant agreed to pay the New York Finance Company $5,000 in the

manner above stated, and also to repay any and all moneys which the said company might have advanced on account of the interest on said loan or for premiums of insurance.

She charges that this transaction and each of the notes and assignments and pledges were executed and entered into in the State of New York in pursuance of a corrupt and usurious contract contrary to the laws of New York, setting out in full in the said bill the statutory provisions of the State of New York the effect of which is to render usurious contracts void.

There are allegations in the bill concerning transactions by others of the *cestuis que trust* respecting their interests in this estate, and a charge that the trustee refuses to account.

It is prayed that the New York Finance Company and the executors of Wood may discover the facts concerning the transactions above set forth; that the notes, assignments and agreements executed and delivered by the complainant to the New York Finance Company and to Wood may be declared null and void, and may be decreed to be delivered up to be canceled, and that an injunction may issue restraining the parties just named from assigning or parting with the possession of the said instruments; that the New York Finance Company and the executors of Wood may be decreed to reconvey to the complainant such right, title and interest in and to the estate of said Campbell coming to the complainant as heir of said Campbell.

An injunction is also prayed against the Fidelity Trust Company to restrain it from paying or delivering to the New York Finance Company and the executors of Wood, by virtue of said notes and assignments, any right, title and interest in and to the estate of Campbell to which complainant is entitled.

An account is prayed against the Fidelity Trust Company, and a decree that any balance found to be due to the complainant may be ordered to be paid to her.

The parties defendant to the bill, in addition to the Fidelity Trust Company, the trustee, are the New York Finance Company, the executors of Wood, and all the *cestuis que trust* or those acquiring interest or claiming to have acquired an interest through said *cestuis que trust* in the estate of Campbell.

To this bill the executors of William Brewster Wood filed a plea, appearing in this cause solely for the purpose of contesting the jurisdiction. Their plea is to the whole of the bill, and sets forth that Wood died a resident of Philadelphia, Pennsylvania, where his will was duly proven and where these executors were duly commissioned; that said will has never been proved in New Jersey, nor have any letters testamentary ever been issued therein to these defendants or either of them; that no exemplified copy of the said will, proof, probate or letters testamentary therein has ever been filed by them or either of them in the State of New Jersey, and that without the assent of the executors the courts of New Jersey cannot assume jurisdiction over them as executors as aforesaid. They pray the judgment of the court whether they should be compelled to make any further or other answer to the said bill, and pray to be dismissed.

*Mr. Henry H. Fryling,* for the complainant.

*Messrs. Collins & Corbin,* for the executors of Wood, defendants.

GARRISON, V. C.

It is apparent from the above *résumé* of the pleadings that the objects of this bill are various. The complainant seeks, as to matters that concern the pleading defendants, to enjoin them from bringing actions upon the note she gave to Wood; to have this note and the pledge of her interest in her father's estate as collateral thereto, and the assignment of such interest, also given as collateral, declared to be null and void.

In so far as the so-called assignment was a transfer of interest in real estate, it does not appear that the executors have any interest, since, of course, Wood's title thereunder would pass to his heirs-at-law, unless his will otherwise disposed of it.

She also seeks an accounting from the trustee, the Fidelity Trust Company, in which accounting Wood, or since his death the representatives of his estate, are undoubtedly interested because of the pledge and assignment given by her as collateral to the note given to Wood, and presumably now held by them.

If this bill did not call for an accounting from the trustee, I think it too clear to admit of discussion that these foreign executors could not be made amenable by compulsory process in this state in such a suit. Whether such issues would be determined in a suit in which an account was being taken, if all of the parties to be affected were before the court, it is not necessary for me to and I do not decide.

The only arguable ground upon which the complainant can seek to maintain the jurisdiction of the court over these foreign executors is that this is a bill for an accounting and that they are interested in the subject-matter of the account.

It is undoubtedly the law that in a suit for an accounting in equity, it is proper to make parties defendant all those who have or who apparently have any interest in the subject-matter of the accounting.

From the charges in the bill it is clear that the decedent, represented at his domicile by these foreign executors, had such an interest in the subject-matter of this accounting as to make him or those representing him proper parties thereto.

The complainant insists that these defendants have been properly joined, for, as he says in his brief, "they might have determined to assent and, by the entry of appearance, submit to the jurisdiction of this court."

Although courts disagree as to whether or not voluntary submission to suits by foreign executors confers jurisdiction upon the court (*13 Am. & Eng. Encycl. L.* (*2d ed.*) *961*), our courts are among those which hold affirmatively upon this subject. *13 Am. & Eng. Encycl. L.* (*2d ed.*) *961*. But this does not aid the complainant. The court of errors and appeals has directly passed upon a similar principle which controls the present situation. In the case of *Wilson* v. *American Palace Car Co., 65 N. J. Eq.* (*20 Dick.*) *730* (*1903*) (at *p. 732*), that court said: "The reason given in the court below for the order in question was that it was necessary or proper for the complainants to make these persons defendants in the bill, and that they ought to have an opportunity to defend the suit. This may be conceded, but it by no means follows that they can be obliged to submit to the

jurisdiction, or that their presence is necessary to enable the court to deal with the rights of other parties in the suit." \* \* \* At *p. 733:* "It remains, therefore, only to determine whether the matters stated in this plea show the defendants to be beyond the compulsory jurisdiction of the court, and if they do, then formally to dismiss the defendants from the controversy in which they declare themselves unwilling to participate."

Wood having died in Philadelphia, and the executors of his will being there commissioned, and no grant having been made in New Jersey to them, they are, as to us, foreign executors, and they have declared themselves unwilling to participate in this suit.

In strictness, the grant of administration operates only within the jurisdiction where it is granted. It gives no legal right to collect debts or recover the possession of property elsewhere. *Lewis* v. *Grognard, 17 N. J. Eq. (2 C. E. Gr.) 425 · (Green, Ordinary, 1865) ; 13 Am. & Eng. Encycl. L. (2d ed.) 916.*

The general rule is well settled that an executor or administrator cannot, in his representative capacity, maintain any action, suit or proceeding, either at law or in equity, in the courts of any sovereignty other than those under whose laws he was appointed or qualified, without obtaining an ancillary grant of probate or letters from the court of probate of such other sovereignty, unless power to sue in the foreign jurisdiction has been conferred upon him by statute. *Lewis* v. *Grognard, supra; Porter* v. *Trall, 30 N. J. Eq. (3 Stew.) 106 (Chancellor Runyon, 1878) ; 13 Am. & Eng. Encycl. L. (2d ed.) 945.*

And similarly the rule is that an executor or administrator cannot be sued in his representative character, unless he is made liable by statute, either at law or in equity, in the courts of any state or country other than that in which he received his appointment. *Durie* v. *Blauvelt, 49 N. J. Law (20. Vr.) 114 (Supreme Court, 1886) ; Rusling* v. *Brodhead, 55 N. J. Eq. (10 Dick.) 200 (Vice-Chancellor Stevens, 1896) ; 13 Am. & Eng. Encycl. L. (2d ed.) 957.*

The fact that in law the personal representative of the decedent, deriving his authority from the law of the decedent's

domicile, is invested with the title to all the personal estate, wherever it may be locally situate, enables him to receive voluntary payments from a foreign debtor and give a valid acquittance (*13 Am. & Eng. Encycl. L. (2d ed.) 932*), does not make it proper for the complainant to bring suit in this state against such foreign executors.

While it may be true that in theory the right of Wood, with respect to the complainant's interest in the estate of Campbell, is now vested in the foreign executors of Wood, the law is well settled that they may not assert this right by any legal proceedings unless they qualify themselves in the manner above stated; or, to put it in another way, Wood's right against the complainant's interest in the estate of Campbell may not be asserted by anyone except a duly-qualified representative in the State of New Jersey.

Similarly, I think, it should be held that nothing which affects that right should be done in the absence of a duly-qualified representative of the estate in this state. *Story Eq. Pl. (Redf. ed.) 185 § 179.* If these foreign representatives may not sue with respect to it, I do not think they should be held to be suable.

Apart from those cases in which the foreign representatives have voluntarily submitted themselves to the jurisdiction, those cases, referred to by the complainant and found in the text-books and authorities, in which a foreign executor has been sued out of the jurisdiction of his appointment will all be found to rest upon some affirmative action taken by the foreign representative within the jurisdiction of the court, or cases in which, but for the interference of a court of equity, there would manifestly be a failure of justice or only a hopeless remedy elsewhere. *13 Am. & Eng. Encycl. L. (2d ed.) 959, 963.*

It is not shown in the case at bar that the foreign executors of Wood have in any way attempted to act in the State of New Jersey, or to do any act with respect to any assets that are within the State of New Jersey.

It would not seem that this is a case in which the complainant is without remedy, or that there will be a manifest failure of justice, if these foreign executors are not held amenable to pro-

cess in this suit, because administration *ad litem* may be obtained to represent the estate, the precedents and practice with respect to which will be found in *Dan. Ch. Pl. & Pr.* (*6th Am. ed.*) *196, *201 et seq.; Dick. Ch. Prec.* (*Rev. ed.*) *57 et seq.; Dick. Prob. Ct. Pr. 56 et seq.; Lothrop's Case,* and note thereto, *33 N. J. Eq.* (*6 Stew.*) *246* (*Runyon, Ordinary, 1880*).

Even if this be a suit in which limited administration of the character just alluded to would not be proper, the complainant could proceed under the twenty-third section of the Orphans Court act. *P. L. 1898 p. 721.* Under that section any person who desires to have a foreign will probated in this state for any purpose may apply to the ordinary, who, upon being satisfied with respect to certain facts, shall admit the same to probate and issue letters testamentary or of administration with the will annexed.

Under all of the authorities, therefore, I conclude that these foreign executors are not amenable to compulsory process in this suit, and that the plea should be sustained.

The practice with respect to the form of the plea, and the propriety of raising this question by plea, and the effect of the judgment on the plea, are settled in the case of *Wilson* v. *American Palace Car Co., supra.*