FREDERIC W. STEVENS, EUGENE STEVENSON, EDMUND B. LEAM-
ING, VIVIAN M. LEWIS, JOHN H. BACKES, JOHN GRIFFIN,
JOHN E. FOSTER AND MERRITT LANE, VICE-
CHANCELLORS.

---

In the matter of WILLIAM TAUB, of the City of New Brunswick,
County of Middlesex, and State of New Jersey, a lunatic.

[Decided March 20th, 1919.]

1. Under the act concerning idiots and lunatics (*Comp. Stat. p. 2781
§ 1*), the guardian of a lunatic appointed by the orphans court is charged
with the duty of the support and maintenance of his ward out of his
goods, chattels and the profits of his lands and tenements, and is em-
powered to consume so much of those goods and chattels as may be neces-
sary therefor; and a power to convert so much of them into cash as may
be necessary for the purpose is implied.

2. Under the act relative to guardians and the estates of minors (*Comp. Stat. p. 2633 § 19*), the orphans court, when the income of a lunatic is insufficient for his proper support, may, if it be found that such lunatic has no other means of support, &c., make an order authorizing the use of the principal of his personal estate, or a part thereof, for such support; and this implies a power to order the conversion of that estate, or such part thereof as may be necessary, into cash, through a sale by the guardian.

3. A guardian may pay out so much of his ward's cash from time to time as may be necessary to settle current bills for his proper maintenance, or may from time to time consume so much of his goods and chattels as may be necessary for the purpose, and, if need be, may first convert those goods and chattels into cash, not by wholesale, but only so much as may be requirable, unless he obtains an order from the orphans court permitting sales in bulk under *Comp. Stat. p. 2633 § 19*.

4. The orphans court, and not the court of chancery, has jurisdiction to order a sale of the personal estate of a lunatic for the purpose of his maintenance.

On petition, &c. On application for sale of lunatic's personal property.

*Mr. George J. Plechner,* for Edward F. Houghton, guardian, petitioner.

WALKER, CHANCELLOR.

William Taub was, by a jury under a commission in the nature of a writ *de lunatico inquirendo* out of this court, found to be a lunatic who does not enjoy lucid intervals, so that he is not capable of governing himself, his goods and chattels, &c. On February 4th, 1919, the petitioner was duly appointed by the orphans court of Middlesex county, guardian of the person and property of Taub, according to the statute. The petition shows that the lunatic is now an inmate of a hospital situate at Central Islip, Long Island, New York; that he is not possessed of any lands or real estate but is possessed of or entitled to goods, chattels and personal estate consisting of jewelry, jewelry store fixtures, silverware, equity in pawn tickets, equity in a liberty bond, and certain rights and credits arising on book accounts and contracts of the value as nearly as the petitioner can ascertain, of $10,000 or thereabouts; that there is no cash in the estate of the lunatic and that he has no means of sup-

port except such as he will receive from the sale of his goods, chattels and personal estate, and that his interest requires that his goods and chattels be sold in order that the same may be converted into cash to be used to properly maintain and support him, and prays that an order may be made by this court directing him, as guardian, to sell all the goods, chattels and other personal property of Taub, of whatsoever the same may consist and wheresoever the same may be situate, either at public or private sale, so that all of his property may be converted into cash, and that he may be properly supported and maintained therefrom.

It is urged that the orphans court has no power, save that residing in the statute, and that there is no statute authorizing that court to order a sale of a lunatic's personal property to raise moneys for his support.

Our act concerning idiots and lunatics (*Comp. Stat. p. 2781 § 1*) provides, among other things, that in case of lunacy found on inquisition out of the court of chancery, the chancellor shall cause to be transmitted to the orphans court a certified copy of all proceedings, which shall be filed and recorded in the surrogate's office, and that the orphans court, on application for the purpose, shall appoint some fit and discreet person guardian of such lunatic, who shall have the care and safekeeping of such lunatic, his lands, tenements, goods and chattels, that the lunatic may live and be competently supported and maintained by and out of his goods, chattels and profits of his lands and tenements, and that such lands, upon the death of any such lunatic, shall descend and go to his heirs, and the residue of the goods, chattels and profits of such lunatic, after payment of his just debts, shall go to and be distributed among his next of kin, and in case such lunatic shall come to his right mind, that the lands and tenements, with the residue of the goods, chattels and profits of such lunatic, be restored to him.

The guardian has given the bond required by section 15 of the act (*Comp. Stat. p. 2793*), one of the conditions of which is, that he shall render a true account of the expenditures and disbursements of the goods, chattels and personal estate of the lunatic that shall come to his hands.

As the statute expressly provides that the guardian shall have the care and safekeeping of the lunatic and his goods and chattels that he may live and be competently supported and maintained out of such goods, chattels and profits of his lands, he is expressly empowered to consume those goods and chattels, or so much of them as may be necessary, for the support of his ward; and, as he may barter and exchange them for such support and maintenance, he certainly has an implied power to turn them into the circulating medium of cash that the beneficent object of the statute may be accomplished; and this view is strengthened, if need be, by the provision in section 15 for the condition of the bond, that the guardian shall render an account of his expenditures and disbursements out of the goods, chattels and personal estate of the lunatic.

The rule is that whatever is necessarily or plainly implied in a statute is as much a part of it as that which is expressed; and the grant of a specific power or the imposition of a definite duty confers by implication authority to do whatever is necessary to execute the power or perform the duty. *36 Cyc. 1112-13.*

The rule concerning an implied power of sale in executors or trustees is apposite.

In *Lindley* v. *O'Reilly, 50 N. J. Law 636,* the court of errors and appeals held that where a testator imposes on his executor a trust to be executed or duties to be performed which require an estate in his hands or a power of sale, the executor will take by implication such an estate or power as will enable him to execute the trust or perform the duties devolved. See, also, *Executors of Vanness* v. *Jacobus, 17 N. J. Eq. 153; Belcher* v. *Belcher, 38 N. J. Eq. 126; Naar v. Naar, 41 N. J. Eq. 88; Hollman* v. *Tigges, 42 N. J. Eq. 127.*

Upon the statute and authorities above cited it is my opinion that the guardian has a right to consume the lunatic's personal estate for his support, and if it does not consist of cash, which he could undoubtedly expend for the purpose mentioned, he may convert the ward's securities into cash for the same purpose.

In *Potter* v. *Berry, 56 N. J. Law 454,* the orphans court made an order directing that the guardian of a lunatic should expend

the sum of $2,000 annually for his support out of his personal estate and the income of his real estate. · The supreme court in that case held that the jurisdiction of the orphans court is the creature of statute and that that court could only exercise those powers which the obvious intention of the legislature appeared to have conferred; and that it could discover no sign of a legislative purpose conferring upon the orphans court authority to decide in advance what amount of the lunatic's personal property or of the profits of this realty should be expended for his support by his guardian; that although the guardian is to render an account of his administration to the orphans court, and that court is to pass upon the propriety of his conduct, yet this by no means implies that before the exigencies arise the court may anticipate the possible conditions and prescribe his duties and limit his powers, and that the guardian, not the court, is made the administrator of those funds, subject only to the judgment of the court upon the honesty and prudence of his transactions; that the power delegated by the statute to the court is essentially different from that exercised in making the order there under review, the former being purely judicial, the latter mainly administrative. The order was held to be beyond the jurisdiction of the orphans court and was set aside.

The meaning of this was, that the guardian might pay out so much of his ward's cash from time to time as was necessary to settle current bills for his proper maintenance, or might from time to time consume so much of his goods and chattels as was necessary for the purpose. And I am of opinion that a guardian may, if need be, first convert the goods and chattels of his ward into cash, not by wholesale, but only so much as may be requirable, unless he obtains an order from the orphans court permitting sales in bulk under *Comp. Stat. p. 2633,* § *19,* which act was passed after the decision of *Potter* v. *Berry.*

It was undoubtedly the purpose of the legislature to relieve a guardian from the annoyance and difficulty, from time to time, of disposing of parcels of personal property, that the act of 1901 (*Comp. Stat. p. 2633,* § *19*) was passed. This statute provides that when it shall be made to appear to the orphans court by the verified petition of the guardian of a lunatic,

among other incapacitated persons, that the income of the estate of such person is insufficient for his proper support, &c., it shall be lawful for the orphans court to inquire into the circumstances of the case, or refer the same to one of the masters in chancery for investigation and report; and if, upon such inquiry, or report, it be found that such person has no other proper means of support, &c., and that such order would be for his best interests, the court may make an order authorizing the use of the principal of the personal estate, or a part thereof, as it may deem for the best interests of the lunatic, &c.

The guardian of a lunatic being under the duty to support his ward out of his goods and chattels and the profits of his lands, has the power, as above shown, to consume those goods and chattels, if need be; and the act of 1901, in my opinion, authorizes the orphans court to order the conversion of his personal estate, or part of it, into cash, for the purpose mentioned, through a sale by the guardian.

A receiver for the estate of the lunatic was appointed *in limine* in these proceedings. He has filed an inventory and report, which shows an estate of the value, apparently, of $9,458.35, consisting of the stock in trade of a jewelry store, books of accounts, pawn tickets, &c. These, or so much of them as may be deemed necessary for the purpose, may be ordered sold by the orphans court for the lunatic's support, by virtue of the act just mentioned. And choses in action may also be sold under the authority of this statute, as they are personal property. They also undoubtedly are goods and chattels in law. *Terhune* v. *Executrix of Bray, 16 N. J. Law 53; Greenwood* v. *Law, 55 N. J. Law 168, 174.*

Upon this whole matter I am clearly of opinion that the orphans court, and not the court of chancery, has jurisdiction to order a sale of the personal estate of a lunatic for the purpose of his maintenance; and the application of the petitioner will, therefore, be denied.