[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 628 
This is a complaint by the Borough of Hasbrouck Heights for the appointment of an administrator ad litem of the estate of John W. Dunn, deceased.
The complaint alleges that said Dunn was domiciled in the State of Michigan at the time of his death; that no will has been probated nor administrator appointed in New Jersey; and that the Borough desires to foreclose municipal liens on certain real estate on which, at the time of his death, the said Dunn was the holder of a mortgage of record. The complaint further alleges that it is the desire of the Borough to foreclose the rights of redemption of the said Dunn's estate in said premises by an action in the Superior Court. *Page 629 
The probate jurisdiction of the Bergen County Court is only such as was formerly exercised by the Orphans' Court of the County (Constitution of 1947, Article VI, section IV,paragraph 1 and P.L. 1948, c. 365). (I have been unable to find any statute conferring any additional jurisdiction in the premises and none has been called to my attention.)
The jurisdiction of the Orphans' Court was limited to such matters as were entrusted to it by statute and such other jurisdiction as was necessary to execute and administer the statutory jurisdiction. See Potter v. Berry, 56 N.J.L. 454; affirmed, 57 N.J.L. 201; Mullaney v. Mullaney, 65 N.J. Eq. 384
at 386; Re Taub, 90 N.J. Eq. 293 at 296; Re Hazeltine,119 N.J. Eq. 308; Re Fulper, 99 N.J. Eq. 293.
Generally speaking, the Orphans' Court had no jurisdiction over the original grant of letters of administration, unless a dispute or controversy arose as to the right of administration. SeeR.S. 3:1-2, R.S. 3:7-5.1 (resident decedents), and R.S.
3:7-10 (ancillary administration on the estate of non-residents); also see In re Queen, 82 N.J. Eq. 583; Quidort's Admr. v.Pergeaux, 18 N.J. Eq. 472; Coursen's Will, 4 N.J. Eq. 408;Admrs. of Morris v. Morris, 16 N.J.L. 526.
The power of a court to appoint an administrator ad litem is not, in this State, governed by any statute, but is one of the implied powers of a court, in a proper case, arising out of the necessities of the situation. Before such an appointment can be made, however, there must be some matter or proceeding pending in the court requiring as a necessary corollary the appointment of such an administrator. See Lothrop's Case, 33 N.J. Eq. 246;Babbitt v. Fidelity Trust Co., 70 N.J. Eq. 651; Simon v.Calabrese, 139 N.J. Eq. 361; and similar cases.
The application in this case is not for a general grant of letters of administration and there is no matter pending in the Bergen County Court requiring the exercise of its inherent powers to appoint an administrator ad litem.
This would seem to dispose of the entire matter, except for the insistence of counsel of the complainant party that there *Page 630 is no other court in the state having probate jurisdiction and, therefore, application must be made to this court. This is a nonsequitur because, even if the matter italicized is true, the application should for reasons already stated be made to the Superior Court which has jurisdiction of the foreclosure of mortgages and the inherent power to appoint an administrator adlitem when necessary. However, in order to clarify the situation, I will now discuss the constitutional question involved.
The brief submitted by the complainant concedes that ArticleVI, section III, paragraph 2, of the Constitution of 1947, confers upon the Superior Court original general jurisdiction in all causes, but contends that that section is circumscribed by the succeeding section dividing the Superior Court into Appellate, Law and Chancery Divisions and notes the absence of any "Probate Division" in the Superior Court, and the absence of any specific provision that the Chancery Division shall exercise the original jurisdiction of the Prerogative Court.
It is contended in the brief that the rules of the Supreme Court alluded to in the Constitution, Article VI, section III,paragraph 3, contain no rules (as I understand it) for any probate procedure in the Superior Court, except for the transfer of pending causes and that the Prerogative Court having been abolished by the Constitution and the Constitution not having transferred its powers, jurisdiction and functions to any other court, that the application is appropriately made to the County Court, Probate Division.
It is further contended that under P.L. 1948, p. 1470, the functions of the Orphans' Court are expressly transferred to the County Court and that the Orphans' Court had jurisdiction underR.S. 3:1-2. It should be noted, however, that this statute empowered the Orphans' Court to hear "controversies" and its jurisdiction was appellate and limited in that respect. SeeRussell's Case, 64 N.J. Eq. 313 at 316; Steele v. Queen,67 N.J.L. 99 at 101.
Until the adoption of the Constitution of 1844 all of the probate jurisdiction was exercised by the Ordinary or Surrogate *Page 631 
General and his deputies, the Surrogates. The Surrogates by that Constitution were made constitutional officers and their duties were fixed by an act of the Legislature (Rev. 1846, app.April 16, 1846) and have, with a few minor changes, remained the same ever since. (See Chadwick's Case, 80 N.J. Eq. 471). By that Constitution, Article VI, section IV, paragraph 2, it was provided: "The Chancellor shall be the Ordinary or Surrogate-General, and Judge of the Prerogative Court."
Illuminating histories of the court may be found in an opinion of the Court of Errors and Appeals in Roesel v. State,62 N.J.L. 216, commencing at p. 244, and In re Hodnett,65 N.J. Eq. 329, at p. 337, and In re Coursen's Will,4 N.J. Eq. 408.
In the Constitution of 1947, Article XI, section IV, paragraph 10, it is provided that:
"All the functions, powers and duties conferred by statute, rules or otherwise upon the Chancellor, the Ordinary, and the Justices and Judges of the courts abolished by this Constitution, to the extent that such functions, powers and duties are not inconsistent with this Constitution, shall be transferred to and may be exercised by Judges of the Superior Court until otherwise provided by law or rules of the new Supreme Court."
The words "or otherwise" (underscored by me), in my opinion, include all functions, powers and duties conferred by any means other than by statutes or rules and, therefore, the grant includes all functions, powers and duties conferred upon the Ordinary by the Constitution of 1844. Furthermore, Article XI,section IV, paragraph 3, provides for the abolishment of the Prerogative Court and then continues "and all their jurisdiction, functions, powers and duties shall be transferred to and divided between the new Supreme Court and the Superior Court according as jurisdiction is vested in each of them under this Constitution."
Article XI, § IV, par. 8, provides for the transfer of pending proceedings from the Prerogative Court to the Chancery Division of the Superior Court and par. 9 of the same Article *Page 632 
provides that the files of pending causes should be delivered to the Clerk of the Superior Court.
Article VI, § III, par. 2, provides that: "The Superior Court shall have original general jurisdiction throughout the State in all causes," and par. 3 that the Superior Court shall be divided into three divisions, and each division shall "hear such causes, as may be provided by rules of the Supreme Court."
1. The rules promulgated by the Supreme Court by virtue of its constitutional authority, expressly provide for and recognize the jurisdiction of the Superior Court in probate matters. SeeChapter X, Rule 3:88-1 et seq. It is unthinkable that these rules would be promulgated if there was any doubt in the minds of the learned judges who constituted that court as to their authority to do so under the Constitution.
2. Prior to the adoption of the 1947 Constitution the Chancellor, as Ordinary or Surrogate General, was the only judge of the Prerogative Court. The Vice-Ordinaries acted as his advisors. His powers, duties and functions as Ordinary were exercised as the judge of that court and a transfer of such powers, duties, etc., of the Ordinary is equivalent to a transfer of the jurisdiction of the court itself.
3. If we were to adopt the construction of the Constitution of 1947 contended for by the complainant, the result would be that the jurisdiction of the Prerogative Court has not been transferred to any other court and, therefore, remains suspended because the court has been abolished. In construing a Constitution courts are enjoined to collect the sense and meaning of one clause by comparing one part with another, and by considering all the parts as a whole, and not one part as a separate and independent provision bearing no relation to the remainder. State v. Murzda, 116 N.J.L. 219, at p. 222.
4. It is inconceivable that the framers of the Constitution and those who voted in favor of its adoption intended any such result, and a consideration of the provisions hereinbefore recited clearly shows that there is no such suspension. *Page 633 
Why should the pending causes in the Prerogative Court be transferred to the Chancery Division of the Superior Court and the files delivered to the clerk of said court, unless for the purpose of hearing them in that court? Why should they not have been delivered to the Surrogate, as Clerk of the County Court, if the latter court was to exercise that jurisdiction?
For the reasons set forth herein, the complaint in the above-entitled matter is dismissed for lack of jurisdiction of the subject matter or, upon motion of the complainant, this and kindred matters may be transferred to the Chancery Division of the Superior Court.
 *Page 1